# Aaron *v.* Woodcock, Appellant.

*Appeals—Constitutional law—Declaratory judgment.*

1. Where, on an appeal from a declaratory judgment under the Act of June 18, 1923, P. L. 840, it appears that there is a real controversy, and that counsel have agreed to raise no question as to the constitutionality of the act, the appellate court, taking into consideration that the act deals with remedies and practice and not with substantive rights, will not insist that the question of the constitutionality of the act shall be argued.

2. In assuming jurisdiction over such an appeal, the court must not be understood as determining any constitutional points, or as indicating any view with reference thereto.

*Landlord and tenant—Lease—Renewal of lease.*

3. There is a distinction between the ordinary meaning of words such as "the privilege of renewing this lease" and the words "the privilege of re-leasing such premises at a yearly rental."

4. To renew a lease implies not only a leasing again of the premises but more, in that it conveys the definite idea that all the terms of the new lease, including the period during which it is to run, are to be the same as those contained in the original lease.

5. To "re-lease" means simply "to lease again" or "to grant a new lease."

6. Where the length of a new term is not specified in a lease, such words as "the privilege of releasing the premises" cannot under any and all circumstances be given the same meaning as "the privilege of renewing the lease," so as to require the same term of years as the original lease.

7. Where no period of duration is mentioned in a lease, the law favors a yearly term, especially where there is an indication that the parties so intended.

8. Where a lease provides for a term of ten years at a rental of $585 per month "during the said term of ten years" and further provides that "at the expiration of the lease" the lessee shall "have the privilege of re-leasing the said premises at the yearly rental of $7,200 payable monthly at $600 per month," the lessee has the privilege of re-leasing the premises for a yearly term at the yearly rental named, but not for the term of ten years as provided in the original lease.

9. In such case the words of the lease are so explicit that there is no place for the application of the rule that in construing provisions relating to renewals, where there is uncertainty, the tenant is favored.

*Contract—Construction—Rearrangement of words.*

10. In constructing a contract the court will not change the position of a phrase which merely qualifies the preceding words, so as to give the contract a different and much wider scope.

Argued February 10, 1925. Appeal, No. 149, Jan. T., 1925, by defendant, from declaratory judgment of C. P. Blair Co., March T., 1924, No. 18, for plaintiff, in case of W. S. Aaron v. Wm. L. Woodcock. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Petition for declaratory judgment under Act of June 18, 1923, P. L. 840. Before SEARLE, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Judgment for plaintiff. Defendant appealed.

*Error assigned* was, inter alia, judgment, quoting record.

*John Woodcock* and *W. I. Woodcock,* for appellant.— A covenant to grant a new lease is not the same as a general covenant to renew and does not import a lease with like terms and provisions or with like covenants: Withlock v. Duffield, Hoffm. N. Y. 110; Willis v. Astor (N. Y.), 4 Edw. 594; Miller v. Trafford, 70 L. J. Ch. 72.

A lease for no determinate period of time but by which an annual rental is reserved is a lease from year to year: Lesley v. Randolph, 4 Rawle 123; Hey v. McGrath, 81* Pa. 310; Jones v. Kroll, 116 Pa. 85.

The lease at bar was made for the original term of ten years and the rent in it was reserved by the month at $585. In this clause giving the option to re-lease the rent is reserved by the year, payable monthly, and this fact should be of some weight in determining the proper interpretation of the clause: McDonald v. Karpeles, 61 Pa. Superior Ct. 496; Cairns v. Llewellyn, 2 Pa. Superior Ct. 599; Creighton v. McKee, 7 Phila. 324; Cunningham v. Pattee, 99 Mass. 248; Rutger v. Hunter, 6 John. Ch. (N. Y.) 218; Reed v. Campbell, 43 N. J. Eq. 406.

When a tenant holds over he is bound by the terms of the lease: Cairns v. Llewellyn, 2 Pa. Superior Ct. 599.

*Thomas C. Hare,* with him *John J. Haberstroh* and *Robert F. Hare,* for appellee.—Early decisions may have made a distinction concerning renewal, extension, re-rent, rent again, re-leasing, privilege of another term, and like expressions, but the more recent authorities uniformly hold that the term employed will be construed to effect the intention of the parties: Cairns v. Llewellyn, 2 Pa. Superior Ct. 599, 607; McDonald v. Karpeles, 61 Pa. Superior Ct. 496, 498.

A simple covenant to renew a lease, which makes no provision as to the terms and conditions of the renewal in the lease implies a renewal for the same rental, term, and conditions as provided in the original lease, and is sufficiently definite and certain to be valid and enforce-

able: Creighton v. McKee, 2 Brewst. 383; Cairns v. Llewellyn, 2 Pa. Superior Ct. 599.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, March 16, 1925:

This is a proceeding under the Uniform Declaratory Judgment Act of June 18, 1923, P. L. 840, to determine whether plaintiff is entitled to a new term of ten years at the expiration of a lease for that period, or whether he is entitled to a term from year to year only. The court below decided in favor of the longer term, and defendant has appealed.

Both parties stated at the bar of this court that they had elected to treat the statute under which these proceedings were brought as constitutional, hence no question was raised on that point; and since the present case involves a real controversy, and the act invoked is one which deals with remedies and practice, rather than with substantive rights, the court is not impelled to insist that its constitutional validity shall be argued at this time; but it may be well to state that in assuming jurisdiction we must not be understood as determining constitutional points, or as indicating any view with reference thereto, for, until such matters are properly raised and argued, we entertain no opinion concerning them.

By lease, dated March 25, 1913, defendant let to plaintiff a building in the City of Altoona "for the term of ten years from the first day of September, 1914," "in consideration whereof" the latter agreed to pay the former "the sum of $585 per month......during the said term of ten years." It is to be noted that no "yearly rental" is mentioned, as in the clause about to be quoted; and, as we shall later point out, the subsequent use of these words, after their omission here, is significant.

The term expired September 1, 1924, and the controversy arises over the construction of the following paragraph: "At the expiration of this lease, said Aaron

[lessee and plaintiff] to have the privilege of re-leasing the said premises at the yearly rental of $7,200, payable monthly at $600 per month." At this point it is to be noted that the privilege granted is not to renew the old lease at an increased monthly rent, but to re-lease the premises on the basis of a yearly rental. In other words, instead of following the form of the original lease and mentioning simply the amount of the monthly payments, as increased, the idea of an annual term is suggested by naming an annual rental.

There is a distinction between the ordinary meaning of words such as "the privilege of *renewing this lease,*" which appear in the cases relied on by plaintiff, and words such as "the privilege of *re-leasing said premises,* at a yearly rental," etc., which appear here. To renew a lease implies not only a leasing again of the premises, but more, in that it conveys the definite idea that all the terms of the new lease, including the period during which it is to run, are to be the same as those contained in the original lease; for, to "renew" is to "revive" or "restore to existence" (Webster's New International Dictionary; and see Rickards v. Rickards, 12 L. J. Eq. 460, 463), while to "re-lease" means simply to "lease again" or "to grant a new lease of": Webster's New International Dictionary. This difference of meaning between "renew" and "re-lease" has significance here, as we shall presently indicate, though, of course, under some circumstances the words might be used to express a like meaning. For instance, in Cairns v. Llewellyn, 2 Pa. Superior Ct. 599, 607 (where other authorities, used by the court below in this case, are cited), the Superior Court states: "The word 'renew' or 'renewal' is not essential [to bring the general provisions of the original lease into the contemplated one,] if other words conveying the same idea are employed,—'re-rent,' 'rent again,' 'privilege of another term,' 'refusal of the premises,' and like expressions, without more, are sufficient, provided the length of the new term is specified"; but this is far

from saying "that, where the length of the term is not specified," such words as "the privilege of re-leasing the premises" must, under every and all circumstances, be given the same meaning as "the privilege of renewing the lease," so as to require the same term of years as the original lease, which in effect is the argument of plaintiff in this case.

To sustain his contention, plaintiff carries the line of authorities on which he relies too far. Speaking generally, it may be said that the cases cited by the court below, and those relied on by plaintiff, all turn on the general rule discussed in 16 R. C. L. sec. 390, at page 887, that a simple covenant to renew, without more, "implies a renewal on the same terms [except as to the renewal clause itself] and for the same time as the original lease, and is therefore sufficiently certain to be binding." There is no question here as to the clause in controversy being "sufficiently certain to be binding," for the parties agree as to this, and the court below has found, without exception being taken, that "All other terms of the re-leasing contract [except as to the period] are admitted and agreed to by the parties, i. e., the premises to be let, the amount of rent and the manner of its payment, and conditions as to repairing, water rent and heating." The only point raised for decision is stated in appellant's question involved thus: "Does the tenant's election to exercise the privilege of [the option] clause give him any additional or extended term, and, if so, for what period of time?"

While the clause in question omits to state in so many words precisely what the term of the new lease is to be, on the other hand it does not provide for a "renewal" of either the old lease or of the old term, or for the privilege of such renewal, but for the privilege of "re-leasing said premises"; and, these words being susceptible of a meaning different from the former, the question is, were they meant to have a different meaning in the present instance?

If, in seeking for the answer to the question just stated, our attention is confined to the option clause, we observe at once that, though no term is stipulated, a yearly rental is fixed, naming the amount, and then,—as in the demise itself,—the amount of the (increased) monthly installment is stated. In view of this mention of the new monthly installments, unless the words "at a yearly rental" were placed in the option clause with a purpose to measure the future term, it may be seen that they are entirely unnecessary and serve no purpose.

The demising clause names a term of ten years and fixes a monthly rental only; had the parties intended a term for the new lease like that in the old one, merely changing the rental, it is natural to assume that they would have used the phraseology of the original lease, and, after providing for the privilege of renewal, would have said, "at $600 per month," instead of expressly providing, as they did, for a yearly rental. Under the circumstances, the last-mentioned provision is significant, and may well be treated as bringing this case within the rule established in Pennsylvania that, where no period of duration is mentioned in a lease, the law favors a yearly term, especially where there is an indication that the parties so intended; and in many cases the stipulation of an annual rental has been accepted as such an indication.

In Lesley v. Randolph, 4 Rawle 123, 125, the court had the following lease before it for interpretation: "We have this day rented to George F. Randolph the store or warehouse No. 241 High Street, the rent to be eight hundred (800) dollars per annum, payable quarterly." We there said: "The lease......is not expressly for any determinate period of time, and it is only by construction that a limitation can be affixed to it. It, at an early period in England, would have been considered a letting at will, but as it is not so in express terms, it would at the time of our Revolution have been deemed a lease from year to year; and more *especially so, as an annual*

*rental is reserved to be paid:* 2 Bl. Com. 147, Chitty's ed. and note (11) ; Adams on Eject. 102-3. Sir William Blackstone says, speaking of tenancies at will, 'Courts of late have rather held them to be tenancies from year to year, so long as both parties please, *especially where an annual rent is reserved':* 2 Bl. Com. 147. In Bree v. Lees, 2 W. Bl. Rep. 1173, Lord Chief Justice DeGrey says, 'All leases for uncertain terms are prima facie leases at will; *it is the reservation of an annual rent that turns them into leases from year to year.'* And Sir J. Mansfield, Chief Justice, in Richardson v. Langridge, 4 Taunt. 131, lays down the same rule in a case put by him by way of illustrating it in the following words: 'If there were a general letting *at a yearly rent, though payable half yearly* or quarterly, and though nothing were said about the duration of the time, it is an implied letting from year to year.'......It also comes directly within the description of a lease from year to year, as it is given by Messrs. Chambers, Bingham, and Comyns, who have each written and compiled a treatise on this subject. Mr. Chambers, in his work, page 355, says, that 'A general taking *at an annual rent* is a lease from year to year.' See Bing. Landlord and Tenant, 177 and Comyn's Landlord and Tenant, pp. 7, 8, 91, and 303, all to the same effect......I however do not wish to be understood as entertaining the opinion that a lease for a year, and so from year to year as long as both parties shall please, is a lease for the term of two years certain at its commencement. My idea of it is this: that it is binding prospectively on the parties for one year only, capable however of being extended to a second, third, fourth, or fifth year, and so on, unless determined by the dissent of either party, which may be done at the close of any one year, by giving three months' previous notice to that effect, but at no time before the close of a year after it has once commenced." See also Hey v. McGrath, 81* Pa. 310; Jones v. Kroll, 116 Pa. 85, 88, 89, 92; 24 Cyc. 1028, par. 2, sec. b. Of course, Lesley v. Randolph

did not involve a new letting following a prior term, but the principles there laid down are more pertinent in construing the present contract than those cited by the lower court.

The three authorities mainly relied on by the court below to sustain the principle applied by it in reaching the decision here appealed from, that "the privilege of a renewal extends the lease for the term of the original lease," are all distinguishable on their facts from the case at bar.

In Karn v. DiLorenzo, 111 Atl. R. 195 (Connecticut Supreme Court of Errors), there was a written lease for three years containing the provision, "with privilege of renewal." Defendant contended that the words employed were too indefinite and uncertain to constitute a contract for a new term. In disposing of this contention, the court said: "The clause is certainly brief, but under well-settled principles of interpretation it is sufficient to constitute a good covenant; . . . . . . it has uniformly been held that a general covenant 'to renew' implies a renewal on the same terms and for the same times as the original lease, and therefore is sufficiently certain to be enforceable." Thus it may be seen that this case, differing from the one at bar, falls strictly within the rule that the bare right to renew a lease, without more, means the right of renewal for a term similar to that in the original lease.

In Kollock v. Kaiser, 98 Wis. 104, 73 N. W. 776, the lease was for ten years, "with the privilege of a renewal," nothing more of significance being said; which, of course, brought the case within the rule just stated.

Phillips v. Reynolds, 20 Washington 374, 55 Pac. 316, decides merely that, under a lease for a fixed term, containing a clause that, at the expiration thereof the landlord would either buy improvements made by the tenant or "extend this lease," without anything to show how long the extension should be for, the landlord could not

escape his liability to purchase the improvements by a mere nominal extension of one day.

There is no effort here, as in most of the prior cases, to defeat the contract, for appellant admits that appellee has the right to a new term under the provisions of the original lease as changed by those of the option clause, and appellee desires to take advantage of that right, whatever it may be; the only question concerns the duration of the new term, and, as to this, the clause itself furnishes the key with sufficient precision to take the case out of the rules relied on by the court below; and also out of control of the rule that, "in construing provisions relating to renewals, where there is......uncertainty, the tenant is favored" (Kaufman v. Liggett, 209 Pa. 87; Stetler v. North Branch Transit Co., 258 Pa. 299; Hunter v. Johns, 275 Pa. 532), likewise relied on by the court below. In short, none of the cited authorities approximately presents the combination of contractual facts which appear in the instant appeal, and none of them controls this case. According to the option clause before us, plaintiff is entitled to lease the demised premises again, but not for the period of the original lease; he is entitled to a yearly term, at the increased rental of $7,200 per annum, under the essential provisions (Rutgers v. Hunter, 6 John. Ch. 215, 218) of the original lease as varied by those stated in the option clause, and the court below erred in deciding otherwise.

We have not discussed other parts of the contract between the parties because, on the record before us, they are not of any particular help in construing the option clause. We may state, however, that the lease provides for certain alterations and repairs to be made by the lessor and for others by the lessee, and it stipulates that the latter is to "pay the water rent and heat the building at his own expense"; while the option clause states that the lessee is to make "his own repairs and improvements, paying the water rent and furnishing his

own heat, as per the terms herein named." Plaintiff's counsel attempt to detach the phrase "as per the terms herein named" from its position at the end of the clause and to attach it to the words at its beginning, so as to make the clause read: "At the expiration of this lease, said Aaron to have the privilege of re-leasing as per the terms herein stated." There is no warrant for so reading the clause; the phrase in question occurs at the end thereof and merely qualifies the preceding words, "paying the water rent and furnishing his own heat," as to which no change is made between the original contract and the contemplated lease.

The declaratory judgment is set aside and the court below is directed to enter one in accord with the views expressed in this opinion; costs to be divided between the parties litigant.