144

GEORGE STANISICH AND HARRY FARONI, PLAINTIFFS AND APPELLANTS, v. STATE HIGHWAY COMMISSION, HARRY L. BURNS, CHAIRMAN, L. V. SWANSON, S. N. HALVORSON, ROY L. SORRELLS, AND OTIS S. WATERS, COMMISSIONERS, DEFENDANTS AND RESPONDENTS.

THE STATE OF MONTANA, ACTING BY AND THROUGH THE STATE HIGHWAY COMMISSION OF THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT, v. GEORGE STANISICH AND HARRY FARONI, DEFENDANTS AND APPELLANTS.

Nos. 10376, 10377
Submitted September 6, 1962. Decided October 11, 1962.
Rehearing denied November 27, 1962.
375 P.2d 1019

R. Lewis Brown, Butte, for appellants.

Daniel J. Sullivan, Helena, for respondents.

HONORABLE W. W. LESSLEY, District Judge, sitting in place of Mr. Justice Doyle, delivered the Opinion of the Court.

Cause No. 10376 and Cause No. 10377 are companion cases. They were consolidated for purposes of argument on request of counsel and will remain so consolidated for purposes of this Opinion.

In Cause 10376, appellants appeal from a judgment entered after an order of the lower court sustained respondents' demurrer, without leave to amend.

In Cause 10377, the basis for appeal was a judgment on the pleadings in an unlawful detainer action. Appellants sought a stay until final determination on appeal of Cause 10376, the prior case; this was denied. This case is related in that respondents gained possession of the leased premises involved in Cause 10376. The following statement of facts is sufficient for both causes. Appellants entered into possession of the premises known as the "Rose Garden" in 1953, under an

assignment of lease. They operated a bar business. The lease they received was the same as to content as the present lease now in controversy. The same lease except as to date had been used by the lessor for many years before the year 1953. Appellants exercised their right to "release" under the lease in 1954, and remained in possession of the "Rose Garden" until the year 1957. That year, the extended lease having expired, a new lease, identical with all the others except as to date, was executed. Before this lease had expired, the lessor sold his interest in the premises, and his lease to respondents. Rspondents refused to execute a new lease when the appellants sought to exercise what they contend is their option to re-lease. Appellants brought an action for specific performance in the court below.

The sole substantive question is whether the language used in the lease gives the appellants an option to renew, or merely a right to lease again.

The district court by sustaining the demurrer of respondents to appellants' complaint in effect held, on the pleadings alone, that it was clear the language used gave to the appellants (lessee) only a right to lease again.

The controversy is centered on the third clause of the lease, which reads as follows: "THIRD: This lease is for a period of three (3) years, commencing on the first day of July, 1957, and terminating the 30th day of June, 1960, *with an option to re-lease.*" (Emphasis supplied.)

This is a case of first impression in this jurisdiction. In light of our conclusion there is little point in restating the well-known rules of interpretation available to a court to determine the meaning and intent of parties to a written instrument. It is sufficient to state that this is not a question of reformation; it is a question of the intent and meaning of the parties to a written document.

Both parties cite a Pennsylvania case, Aaron v. Woodcock, 283 Pa. 33, 128 A. 665, 38 A.L.R. 1251, to sustain their respective positions. We are not convinced that this case is persuasive to

either point of view. The facts decisive there were whether plaintiff was entitled to a new lease of ten years. The court below decided in favor of the longer term; on appeal the court above held for the shorter term. Significantly, in that case, there was no attempt to defeat the lease; the lessor, admitting the lessee had a right to a new term under the provisions of the original lease. The clause the Pennsylvania Court was faced with read as follows: "At the expiration of this lease, said Aaron [lessee and plaintiff] to have *the privilege of releasing* the said premises at the yearly rental of $7,200, payable monthly at $600 per month." (Emphasis supplied.)

The court there held that the privilege granted is not to renew the old lease at an increased monthly rent but to "re-lease" the premises on the basis of a yearly rental.

The court in the Aaron case, tried its hand at defining the phrases "renewing this lease" and "re-leasing said premises" and concluded with this statement: "This difference of meaning between 'renew' and 're-lease' has significance here, as we shall presently indicate, though, of course, *under some circumstances the words might be used to express a like meaning.*" (Emphasis supplied)

If the words were perfect instruments of communication we could approve the district court's order sustaining the demurrer. At the threshold of the case twinges of doubt accompanied even the district court's order when the district judge, in the order stated:

"* * * although there is a serious question in the mind of the Court that this was the intention of the parties." The question to be decided was simply what did the parties intend?

The construction of the lease must deal with the real intent of the parties. The district court by overruling the demurrer could have opened the door to evidence that might or might not shed light on this question. As our court has stated many times, "In construing the provision for a lease the courts will look to the practical construction given it by the parties

themselves." Blinn v. Hutterische Society of Wolf Creek, 58 Mont. 542, 194 P. 140; Abell v. Bishop, 86 Mont. 478, 284 P. 525.

It is evident here that at the stage of the demurrer, the court was resorting to interpretation of the lease provision only on the words as used. It was not, nor did the court indicate it, as a case where the lease was free from doubt. Dick v. King, 73 Mont. 456, 236 P. 1093. The court can and should permit evidence to be heard at the trial of the case. Once that is done and the intent and meaning ascertained, it will be a simple task to give effect to the construction so determined, by granting or denying specific enforcement.

In Cause 10377 we think the court erred in not granting the stay. Orderly procedure demands such short delay. See Simmons v. Superior Court, 96 Cal.App.2d 119, 214 P.2d 844, 19 A.L.R.2d 288. Once Cause 10376 is decided, this companion cause of unlawful detainer will stand or wither away.

The order of the district court sustaining the demurrer is reversed and the cause remanded for further proceedings, not inconsistent with this opinion.

The order of the district court in refusing a stay in Cause 10377, until determination on appeal, is reversed. Let it be stayed until Cause 10376 is finally determined.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES ADAIR, CASTLES and JOHN C. HARRISON, concur.