Korkonikitas, Appellant, *v.* Allegheny General Hospital.

Argued October 3, 1968. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*James G. Dunn,* with him *McGregor, Dunn & Holland,* for appellant.

*G. W. Wilde,* with him *G. Harold Blaxter,* and *Blaxter, O'Neill, Houston & Nash,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, January 15, 1969:

On November 5, 1962, the Allegheny General Hospital, a nonprofit corporation, as "Owner," executed an instrument entitled "Agreement of Lease" with

Athanasios Korkonikitas, "Lessee." Paragraph 1 of the Agreement of Lease provided as follows:

"1. The Owner agrees to lease to the Lessee the above described area [a lot 150 feet square] on a continuous term as long as said Hospital Officers *do not decide to use the area for the erection of a building to be used with the Hospital for any purpose.*\* The term of the lease shall begin November 5, 1962 and for the monthly rental of One Dollar ($1.00) per month and the Lessee agrees to lease the area for a parking lot during the term. The first month of the term shall begin on the first day of the month following the execution of the lease and in the event the Owner decides to erect a building on said area, it agrees to give a thirty-day written notice to the Lessee of its starting to erect a building on said lot, by serving same on the first day of any month. . . ."

The "Agreement of Lease" further provided that the hospital would pay all real estate taxes on the lot, and that Korkonikitas would cover the lot with slag for parking use and construct entrances for ingress and egress, would carry public liability insurance for the protection of both the hospital and himself, and would pay any taxes levied on the privilege of engaging in the parking lot business. Since the execution of the "Agreement of Lease," Korkonikitas has operated for approximately five-and-a-half years a *public* parking lot on the described area.

On March 12, 1968, the hospital verbally notified Korkonikitas of its intention to erect a building on the leased lot commencing June 1, 1968, and that Korkonikitas should vacate as of that date. This was followed by written notices to the same effect on April 4, 1968 and on May 1, 1968. During May 1968, Kor-

---

\* Italics, ours.

konikitas was permitted to examine the hospital's plans for the use of the property; these plans indicated that the hospital intended to use the area as a parking lot for doctors and other personnel attached to the hospital staff. This proposed conversion from a public parking lot was part of a Governmental urban redevelopment program. The plans called for the construction of a small structure to be used as a shelter for parking attendants; this structure represented the "building" the hospital decided to erect on the leased premises.

After viewing the plans, Korkonikitas brought this action in Equity seeking to enjoin the hospital from terminating the lease and evicting him from the parking lot, on the ground that the hospital's intention to erect a 3' x 6' parking attendant shelter on the 150' x 150' parking lot area did not constitute a "building" within the meaning of the lease. Plaintiff contended that the lease agreement required the erection of a building which would cover the entire parking lot. The lower Court found, inter alia, that the parties intended that "the Hospital could terminate the lease by deciding to build a building, however small, to be used with the Hospital for any purpose," and dismissed the bill.

Considering the Agreement in its entirety, we agree with this interpretation.*

Parking space is today not only an appropriate use for a hospital but has become a virtual necessity. The

---

* Since the lease did not designate any term certain, the parties did not raise, and we need not decide because we believe the intention of the parties is clear from the language of the lease, the issue whether the tenancy was a tenancy for month-to-month or a tenancy at will. See, *Jones v. Kroll*, 116 Pa. 85, 8 Atl. 857; *Aaron v. Woodcock*, 283 Pa. 33, 128 Atl. 665; *Hollis v. Burns*, 100 Pa. 206; Thompson on Real Property, §1088; Coke on Littleton, §45(b).

most appropriate building—if not the only suitable building—on a parking lot is a small building for a parking attendant, where the parking attendant can be stationed to service the hospital's doctors, nurses, patients and visiting families who come to the hospital in automobiles.

We find no merit in any of plaintiff's contentions.

Decree affirmed; costs on appellant.

Mr. Justice MUSMANNO did not participate in the decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE O'BRIEN:

The majority here and the court below are permitting a patent evasion of the lease by the Hospital. The parking attendant shack is obviously not the building contemplated by the lease as terminating it.

Mr. Justice COHEN joins in this dissent.